# IN THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS, FORT WORTH DIVISION

| | |
|---|---|
| RONALD KOSSEY,<br><br>                    Plaintiff,<br><br>v.<br><br>US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES III TRUST AND SN SERVICING CORPORATION,<br>                    Defendants. | Civil Action No. 4:22-cv-00007-O |

## ORIGINAL ANSWER AND COUNTERCLAIM OF DEFENDANTS US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES III TRUST AND SN SERVICING CORPORATION

Defendants, US Bank Trust National Association as Trustee of the Tiki Series III Trust ("US BANK" or "Counter-Plaintiff") and SN Servicing Corporation ("SN" and "Collectively the "Defendants"), respectfully file this answer to, and counterclaim against, Plaintiff Ronald Kossey's (herein "Plaintiff" or "Counter-Defendant") Original Petition and Stay of Order to Proceed with Expedited Foreclosure Under Tex. Rule of Civil Procedure 736 (the "Complaint").    In support hereof, Defendant shows this Court as follows:

### NOTIE UNDER TEX R. CIV. P. 736.11

1.      Paragraph 1 states legal conclusions to which no response is required.  To the extent a response is required, Defendant admits that it received a copy of the Complaint and the foreclosure sale scheduled for January 4, 2022 was cancelled.

### JURISDICTION AND VENUE

2.  Defendants admit that the Wise County District Court would have had jurisdiction and been the proper venue if the case was not removed to the United States District Court for the Southern District of Texas has jurisdiction over this action.

### Parties

3.  Defendants lacks sufficient knowledge to admit or deny the allegations of Paragraphs 3.

4.  US Bank is a National Association, not a Federal Savings Bank, and it admits that it may be served through its registered agent.

5.  SN admits the allegations contained in paragraph 5.

### Factual Background

6.  Defendants admit the allegations contained in paragraph 6.

7.  Defendants admit the allegations contained in paragraph 7.

8.  Defendants admit the allegations contained in paragraph 8.

9.  Defendant admit that there were a number, not all are listed, emergency orders issued by the Texas Supreme Court related to COVID-19, but Defendant denies that all of these orders extended deadlines for court filings as contained in the allegations in Paragraph 9.

10. Defendants deny the allegations in Paragraph 10.

11. Defendant US Bank admits it was granted judgment in its case to enforce the Deed of Trust but denies that the court violated any COVID emergency orders in granting said judgment as alleged in Paragraph 10.

12.    Paragraph 12 contains legal conclusions for which no response is necessary.

## **DECLARATORY JUDGMENT**

13. No allegations ae contained in paragraph 13 and thus no response is required.

14.  Paragraph 14 contains legal conclusions for which no response is necessary.

15.  Paragraph 15 contains legal conclusions for which no response is necessary.

16. Defendants deny the allegations in paragraph 16.

17. Paragraph 17 contains legal conclusions for which no response is necessary.

18. Paragraph 18 contains legal conclusions for which no response is necessary.

### **Attorney's Fee**

19. Defendants deny the allegations contained in Paragraph 19.

### **Discovery**

20. Paragraph 20 contains legal conclusions for which no response is necessary.

### **Notice**

21. Paragraph 21 states legal conclusions to which no response is required.

### **Conditions Precedent**

22. Defendants deny the allegations contained in paragraph 22.

### **Rule 47 Declaration**

23. Defendants deny the allegations contained in paragraph 23.

### **Prayer**

24.  Plaintiff is not entitled to the relief in the prayer section of the complaint.

## **AFFIRMATIVE DEFENSES**

25. Plaintiff fails to state a claim upon which relief may be granted.

26. Defendants deny all conditions precedent to Plaintiff's claims have occurred or otherwise been met.

27. Plaintiff's claims are barred, in whole or in part, by the statute of limitations and doctrine of laches.

28. Plaintiff's clams are barred, in whole or in part, because Plaintiff first materially beached the contract(s) upon which Plaintiff bases their claims.

29. Plaintiff's claims are barred, in whole or in part, because Plaintiff has unclean hands.

30. Plaintiff's claims are barred, in whole or in part, because Plaintiff's own acts or omissions caused or contributed to Plaintiff' injury, if any.

31. Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver, estoppel, or release.

32. Plaintiff's claims are barred, in whole or in part, by the failure to pay or tender payment of the amount due.

33. Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate damages.

34. Plaintiff's claims are barred, in whole or in part, by the economic loss rule.

35. Plaintiff's claims are barred, in whole or in part, because any allegedly wrongful acts or omissions of Defendants were a good faith result of bona fide error.

36. Any allegedly wrongful acts or omissions of Defendants, if and to the extent such acts and omissions occurred, were legally excused or justified.

37. Plaintiff's claims are barred, in whole or in part, for the reason, and to the extent, they rely upon statements, representations, promises and/or understanding which are required by the statute of

frauds and the parol evidence rule to be in writing and signed by the parties to be charged in order to be enforceable and/or justifiably and/or reasonably relied upon, but are not.

38. To the extent Plaintiff is entitled to recover damages, Defendants are entitled to an offset against any benefits Plaintiff realized as a result of Plaintiff's failure to comply with the terms of the loan.

39. The Plaintiff's claims are barred because they are moot.

## DEFENDANT US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES III TRUST COUNTERCLAIM AGAINST PLAINTIFF RONALD KOSSEY

### Parties

40. Defendant and Counter-Plaintiff US Bank Trust National Association as Trustee of the Tiki Series III Trust whose address is c/o SN Servicing Corporation, 323 Fifth Street, Eureka, CA 95501 (again, referred to as "US Bank or "Counter-Plaintiff" below).

41. Plaintiff and Counter-Defendant Ronald D. Kossey (again herein known as "Plaintiff" or "Counter-Defendant"), whose last known address is 135 Lakeshore Drive, Runaway Bay, TX 76426.

42. This proceeding concerns the property commonly known as 135 Lakeshore Drive, Runaway Bay, TX 76426 with the following legal description:

Situate, lying and being in the County of Wise, State of Texas, described as follows:

Being all of Lot 73, Block 8, Unit 1 Runaway Bay, a Subdivision on Wise County, Texas, according to the Plat(s) recorded in Plat Cabinet A, Section 111-126, Plat Records of Wise County, Texas. (the "Property")

### Jurisdiction And Venue

43. There is supplemental jurisdiction in this Court because this suit is filed a Counterclaim where Plaintiff the issues arise from the same set of related facts pursuant to 28 U.S.C. § 1367.

44. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the Property that is the subject of this action is located in this district

## Facts and Procedural History

45. On or about February 4, 2008, Counter-Defendant signed a Texas Home Equity Note (Fixed Rate - First Lien) ("Note") and a Texas Home Equity Security Instrument (First Lien) ("Deed of Trust" the Note and Deed of Trust collectively are the "Loan Agreement") to secure a home equity loan against the Property. Said Deed of Trust was secures home equity lien under article XVI, section 50(a)(6) of the Texas Constitution and the Deed of Trust at Instrument Number 2008-20310, as Book 1908, Page 58 and recorded in the real property records of Wise County, Texas. True and correct copies of the Note and Deed of Trust are attached hereto as **Exhibit 1** and **Exhibit 2**, respectively, and are incorporated herein.

46. Counter-Plaintiff is the owner and holder of the Note and assignee, through an unbroken chain of assignments, of the Deed of Trust. True and correct copies of the Assignment of Deed of Trust from Nationstar Mortgage LLC, the originator of the loan, to US Bank Trust N.A., as Trustee of the Bungalow Series II Trust and the Assignment of Deed of Trust from US Bank Trust N.A., as Trustee of the Bungalow Series II Trust to US Bank Trust National Association as Trustee of the Tiki Series III Trust. are attached hereto as **Exhibit 3** and **Exhibit 4**, respectively, and are incorporated herein.

47. The documents attached to this Counterclaim and are made a part of this proceeding for all purposes and are true and correct copies of the pertinent original Loan Agreement documents related to the debt secured by the Loan Agreement and the Property made the subject of this proceeding.

48. Counter-Defendant, the obligors of the debt evidenced by the Note and Deed of Trust, used funds advanced by the original mortgagee under the Deed of Trust.

49. According to Counter-Plaintiff's records, at least 28 regular monthly payments have not been made in accordance with the terms of the Loan Agreement, and the Note is currently due for the October 8, 2019 payment. Therefore, there has been a material breach of the Loan Agreement. Prior to the filing of this Counterclaim, Counter-Plaintiff sent the notice to cure the default, as required under the terms of the Loan Agreement. A true and correct copy of the Notice of Default is attached hereto as **Exhibit 5** and is incorporated herein.

50. As a consequence of the failure to cure the default, Counter-Plaintiff has accelerated the maturity of the debt evidenced by the Loan Agreement. A true and correct copy of the Notice of Acceleration is attached hereto as **Exhibit 6** and is incorporated herein.

51. Counter-Plaintiff filed suit pursuant to Texas Rule of Civil Procedure 736 in Case No. CV21-07-506 in the 271 District Court of Wise County (the "736 Case") and obtained an order allowing the non-judicial foreclosure of the Property on September 20, 2021. A true and correct copy of the Order allowing non-judicial foreclosure in the 736 Case (the "736 Order") is attached hereto as **Exhibit 7** and is incorporated herein.

52. Plaintiff/Counter-Defendant commenced the first action with his Original Petition and Stay of Order to Proceed with Expedited Foreclosure Under Tex. Rule of Civil Procedure 736 in Cause No. CV21-07-506 in the case styled "Ronald Kossey v. US Bank Trust National Association as Trustee of the Tiki Series III Trust and SN Servicing Corporation" as Cause No. CV21-10-765 (the "First State Court Action") in the 271st District Court of Wise County on October 28, 2021.

53. The Defendant/Counter-Plaintiff removed that case to this Court on November 4, 2021 pursuant to 28 U.S.C. §§1331, 1332(a), on the basis of diversity jurisdiction and then filed a 12(b)(6) motion to dismiss for failure to state a claim.

54. The Plaintiff then non-suited the First State Court Action and this court terminated the case on November 16, 2021.

55. Plaintiff/Counter-Defendant commenced this action with his Original Petition and Stay of Order to Proceed with Expedited Foreclosure Under Tex. Rule of Civil Procedure 736 in Cause No. CV21-07-506 (the "Petition") in the case styled "Ronald Kossey v. US Bank Trust National Association as Trustee of the Tiki Series III Trust and SN Servicing Corporation" as Cause No. CV22-01-004 (the "Second State Court Action") in the 271st District Court of Wise County, Texas pm January 3, 2022.

56. Counter-Defendant has not filed any motions to have the 736 Order vacated in the 736 Case despite having filed the First State Court Action and the Second State Court Action.

57. As of January 31, 2022, the Loan Agreement reinstatement was at least $42,622.96 and the payoff, as "pay-off" is defined in TEX. PROP. CODE § 12.017, was at least $119,291.86. However, these sums increase daily under the terms of the Loan Agreement to include, but not limited to, earned interest, collection costs to include attorney's fees, taxes, insurance, and other legally authorized expenses.

58. All conditions precedent have been performed or have occurred for Counter-Plaintiff to enforce its security interest against the Property.

**First Cause of Action: Declaratory Judgment 736 Order in Cause No. CV21-07-506 in the 271 District Court of Wise County is still valid and enforceable.**

59. Counter-Plaintiff adopts and re-alleges the matters set forth in paragraphs 1 through 58, as if fully set forth herein

60. Tex. R. Civ. P. 736.11(c) states that "[w]ithin ten days of filing [a separate lawsuit as required by Tex. R. Civ. P. 736.11(a)], the respondent must file a motion and proposed order to dismiss or vacate with the clerk of the court in which the application was filed giving notice that respondent has filed an original proceeding contesting the right to foreclose in a court of competent jurisdiction. If

no order has been signed, the court must dismiss a pending proceeding. If an order has been signed, the court must vacate the Rule 736 order."

61. 10 days have passed since the Complaint was filed and the Second State Court Action was commenced and Counter-Defendant has not filed the motion in the 736 Case to vacate the 736 Order. A true and correct copy of the Docket for 736 Case showing that that no motions to vacate the 736 order have been filed is attached as **Exhibit 8** and is incorporated herein.

62. Declaratory Judgment is appropriate when an actual controversy exists between the parties, and the entire controversy may be determined by judicial declaration. Declaratory Judgment should be granted when the judgment will serve a useful purpose in clarifying and settling the legal relations at issue and will terminate and afford relief from the controversy giving rise to the proceeding. See Smith v. Vowell, 379 F. Supp. 139, 163 (W.D. Tex. 1974).

63. Based on the DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201, and TEX. CONST. art. XVI § 50(a)(6), and Texas Rule of Civil Procedure 736.11(c), Counter-Plaintiff asks the Court to declare the 736 Order is still valid enforceable.

**Second Cause Of Action: Declaratory Judgment Authorizing Non-Judicial Foreclosure**

64. Counter-Plaintiff adopts and re-alleges the matters set forth in paragraphs 1 through 63, as if fully set forth herein

65. In the alternative to the First Cause of Action, Counter-Plaintiff seeks to exercise its right of title and possession to the Property in accordance with TEX. CONST. art. XVI § 50(a)(6). Based on the DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201, and TEX. CONST. art. XVI § 50(a)(6), Counter-Plaintiff seeks a Declaratory Judgment from this Court allowing Counter-Plaintiff to proceed with nonjudicial foreclosure against the Property and thereby divesting Counter-Defendant of all right, title and interest in the Property. No personal liability is sought against Counter-Defendant.

66. Declaratory Judgment is appropriate when an actual controversy exists between the parties, and the entire controversy may be determined by judicial declaration. Declaratory Judgment should be granted when the judgment will serve a useful purpose in clarifying and settling the legal relations at issue and will terminate and afford relief from the controversy giving rise to the proceeding. *See Smith v. Vowell*, 379 F. Supp. 139, 163 (W.D. Tex. 1974)

67. Based on the DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201, and TEX. CONST. art. XVI § 50(a)(6), Counter-Plaintiff seeks a Declaratory Judgment from this Court divesting Counter-Defendant of all right, title, and interest in the Property securing the Loan Agreement made the subject of this proceeding upon foreclosure and conveyance of the Property by a trustee's deed in accordance with TEX. CONST. art. XVI § 50(a)(6)(D).

68. The undisputed facts in this case conclusively establish the following: (1) the Loan Agreement was created under TEX. CONST. art. XVI § 50(a)(6); (2) Counter- Plaintiff, as the Beneficiary of the Deed of Trust, has the requisite authority to conduct a non-judicial foreclosure; and (3) the Loan Agreement is in default and repayment of the money secured by the security instrument is in default.

## **PRAYER**

WHEREFORE, Counter-Plaintiff US Bank asks that this court issue a Declaratory Order pursuant to DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201 that the Counter-Plaintiff can non-judicially foreclosure pursuant to the 736 Order, or alternatively, that this Court a Declaratory Order pursuant to DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201 authorizing Counter-Plaintiff to foreclose its lien created under TEX. CONST. art. XVI § 50(a)(6)  in compliance with the Loan Agreement and TEX. PROP. CODE § 51.002 as defined herein, and the Defendants respectfully requests this Court enter judgment that Counter-Defendant//Plaintiff take nothing by this suit, dismiss

Plaintiff' claims with prejudice and award Defendants any such other relief to which Defendants may be entitled.

Date: January 14, 2022

Respectfully submitted,

**GHIDOTTI | BERGER LLP**

*/s/ Chase A. Berger*
Chase A. Berger, Esq.
State Bar No. 24115617
9720 Coit Road, Ste. 220-228
Plano, Texas  75025
Tel: (305) 501-2808
Fax: (954) 780-5578
Email: cberger@ghidottiberger.com
**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that on January 14, 2022, this document was served upon Plaintiff and all other interested parties by the Court's ECF system, first class mail, and/or e-mail.

Robert C Newark, III
A Newark Firm
1341 W. Mockngbird Lane, Suite 600W
Dallas Texas 75247
Email: office@newarkfirm.com
ATTORNEY FOR PLAINTIFF

By: /s/ Chase Berger
        Chase Berger

# EXHIBIT 1

249530575

**THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6),
ARTICLE XVI OF THE TEXAS CONSTITUTION**

# TEXAS HOME EQUITY NOTE
## (Fixed Rate - First Lien)

FEBRUARY 4, 2008                                           LEWISVILLE, TX 75067
[Date]                                   [City]                                      [State]

135 LAKESHORE DRIVE, RUNAWAY BAY, TX 76426
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for the Extension of Credit that I have received evidenced by this Note, I promise to pay U.S. $      100,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender.
The Lender is
  NATIONSTAR MORTGAGE LLC

                                                                                    . I will make
all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The property described above by the Property Address is subject to the lien of the Security Instrument executed concurrently herewith (the "Security Instrument").

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          7.810         %. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or Prepayment of the Extension of Credit, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the Principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the       8th       day of each month beginning  MARCH 8 2008                    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  FEBRUARY 8, 2038               , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   P.O. BOX 199400
      DALLAS, TX  75219-9077                             or at a different place if required by the Note Holder.

**TEXAS HOME EQUITY NOTE (Fixed Rate-First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**


VMP®-8035(TX) (0310)          Form 3244.1 1/01
Page 1 of 4                    (rev. 10/03)
VMP Mortgage Solutions (800)521-7291    Initials: _CDK_



249530575

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $         720.57

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. Should the Note Holder agree in writing to such changes, my payments thereafter will be payable in substantially equal successive monthly installments.

## 5. LOAN CHARGES

All agreements between Note Holder and me are expressly limited so that any interest, loan charges, or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this Extension of Credit and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Extension of Credit exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder will make this refund by making a payment to me. **The Note Holder's payment of any such refund will extinguish right of action I might have arising out of such overcharge.**

It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity or eliminated as a requirement, if necessary for compliance with such law, and such document may be reformed by written notice from the Note Holder without the necessity of the execution of any new amendment or new document by me.

The provisions of this Section 5 shall supersede any inconsistent provision of this Note or the Security Instrument.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of         10       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.00             % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means. This Note may not be accelerated because of a decrease in the market value of the property described above or because of my default under any indebtedness not evidenced by this Note or the Security Instrument.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

249530575

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated as fees to be incurred in connection with maintaining or servicing this Extension of Credit.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify Note Holder of failure to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of my promises and obligations in this Note are performed, including the payment of the full amount owed. Any person who takes over these obligations is also so responsible.

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note. This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including a judgment for any deficiency that results from Note Holder's sale of the property described above for an amount less than is owing under this Note.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 8 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

**9. WAIVERS**

**I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.**

**10. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

249530575

## 11. APPLICABLE LAW

This Note shall be governed by the law of Texas and any applicable federal law. In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

## 12. NO ORAL AGREEMENTS

THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

_____ (Seal)       _____ (Seal)
RONALD D. KOSSEY               -Borrower                                    -Borrower

_____ (Seal)       _____ (Seal)
                               -Borrower                                    -Borrower

_____ (Seal)       _____ (Seal)
                               -Borrower                                    -Borrower

_____ (Seal)       _____ (Seal)
                               -Borrower                                    -Borrower

*[Sign Original Only]*

## ALLONGE TO NOTE

**LOAN NUMBER:**             249530575

**ALLONGE TO NOTE DATED:**   2/4/2008

**LOAN AMOUNT:**             100,000.00

**PROPERTY ADDRESS:**

    135 LAKESHORE DRIVE RUNAWAY BAY, TX 76426

**IN FAVOR OF:**

    Nationstar Mortgage LLC

**AND EXECUTED BY:**

    RONALD D. KOSSEY

**PAY TO THE ORDER OF**

_____

**WITHOUT RECOURSE**

    Nationstar Mortgage LLC

BY: _____.

    Alexander J. Mata

**TITLE: DOCUMENT SIGNER**

**DATE : 2/11/2008**

# EXHIBIT 2

Return To:
First American RES
ATTN: Nationstar Mortgage Tracking
450 E.Boundary Street
Chapin, SC 29036

Prepared By:
Bobby Stump

10-492209-18

Prepared by & Return to: *Lionel Sanders*
TransContinental Title Co.
4033 Tampa Rd Suite 101
Oldsmar, FL 34677

249530575                                                                    1of2

————————————(Space Above This Line for Recording Data)————————————

THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY
SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

# TEXAS HOME EQUITY SECURITY INSTRUMENT
## (First Lien)

This Security Instrument is not intended to finance Borrower's acquisition of the Property.

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON,
YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING
INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN
REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:
YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 10, 12, 17, 19, 20 and 21. Certain rules regarding the usage of words used in this document are also
provided in Section 15.

(A) "Security Instrument" means this document, which is dated          2/04/2008
together with all Riders to this document.

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT     Form 3044.1 1/01
Wolters Kluwer Financial Services
VMP®-8036(TX) (0704)          (rev. 10/03)
Page 1 of 18            Initials: *RDK*

249530575

(B) "Borrower" is
RONALD D. KOSSEY, unmarried.

Borrower is the grantor under this Security Instrument.
(C) "Lender" is
NATIONSTAR MORTGAGE LLC
Lender is a    A LIMITED LIABILITY COMPANY
organized and existing under the laws of    THE STATE OF DELAWARE
Lender's address is    350 HIGHLAND DRIVE
              LEWISVILLE, TX 75067-4177
Lender includes any holder of the Note who is entitled to receive payments under the Note. Lender is the
beneficiary under this Security Instrument.
(D) "Trustee" is    BAXTER & SCHWARTZ P.C.

                                                              . Trustee's address is

              5450 NW CENTRAL DR STE 307
              HOUSTON TX  77092-2063
(E) "Note" means the promissory note signed by Borrower and dated      2/04/2008
The Note states that Borrower owes Lender
     ONE HUNDRED THOUSAND & 00/100                                              Dollars
(U.S. $        100,000.00  ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than      2/08/2038      .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Extension of Credit" means the debt evidenced by the Note, as defined by Section 50(a)(6), Article
XVI of the Texas Constitution and all the documents executed in connection with the debt.
(H) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following
riders are to be executed by Borrower [check box as applicable]:

☐ Texas Home Equity Condominium Rider           ☐ Other:
☐ Texas Home Equity Planned Unit Development Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an

VMP®-8036(TX) (0704)                      Page 2 of 18                   Initials: RDK
                                                              Form 3044.1  1/01 (rev. 10/03)

249530575

account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Extension of Credit does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**
This Security Instrument secures to Lender: (i) the repayment of the Extension of Credit, and all extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in the
COUNTY                    of              WISE                    :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

BEING ALL OF LOT 73, BLOCK 8, UNIT 1, RUNAWAY BAY, A SUBDIVISION IN WISE COUNTY, TEXAS, ACCORDING TO THE PLAT(S) RECORDED IN PLAT CABINET A, SECTION 111-126, PLAT RECORDS OF WISE COUNTY, TEXAS.

Parcel ID Number:  S2681042900                      which currently has the address of
                   135 LAKESHORE DRIVE                                          [Street]
                   RUNAWAY BAY                  [City], Texas    76426    [Zip Code]
("Property Address"):

Initials: RDK

VMP®-8036(TX) (0704)              Page 3 of 18              Form 3044.1  1/01 (rev. 10/03)

249530575

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current. Lender may accept any payment or partial payment insufficient to bring the Extension of Credit current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payment in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Extension of Credit current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be

VMP®-8036(TX) (0704)                    Page 4 of 18                    Initials: RDK                    Form 3044.1  1/01 (rev. 10/03)

249530575

paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Extension of Credit, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender

249530575

shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Extension of Credit.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Extension of Credit. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Extension of Credit, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal

VMP®-8036(TX) (0704)                    Page 6 of 18             Initials: _RDIC_   Form 3044.1  1/01 (rev. 10/03)

249530575

certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

249530575

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower's actions shall constitute actual fraud under Section 50(a)(6)(c), Article XVI of the Texas Constitution and Borrower shall be in default and may be held personally liable for the debt evidenced by the Note and this Security Instrument if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan or any other action or inaction that is determined to be actual fraud. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead, the representations and warranties contained in the Texas Home Equity Affidavit and Agreement, and the execution of an acknowledgment of fair market value of the property as described in Section 27.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9. No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other Applicable Law.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and

VMP®-8036(TX) (0704)                Page 8 of 18                Initials: RDK    Form 3044.1  1/01 (rev. 10/03)

249530575

restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding which is not commenced as a result of Borrower's default under other indebtedness not secured by a prior valid encumbrance against the homestead, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization

249530575

of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Security Instrument Execution; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any person who signs this Security Instrument, but does not execute the Note: (a) is signing this Security Instrument only to mortgage, grant and convey the person's interest in the Property under the terms of this Security Instrument and to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse; and (d) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Extension of Credit Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Extension of Credit is subject to a law which sets maximum Extension of Credit charges, and that law is finally interpreted so that the interest or other Extension of Credit charges collected or to be collected in connection with the Extension of Credit exceed the permitted limits, then: (a) any such Extension of Credit charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender will make this refund by making a payment to Borrower. **The Lender's payment of any such refund will extinguish any right of action Borrower might have arising out of such overcharge.**

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail (but, by certified mail if the notice is given pursuant to Section 19) to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to

249530575

have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the laws of Texas. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copies.** Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by Borrower related to the Extension of Credit.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security

249530575

Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance; Lender's Right-to-Comply.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Extension of Credit is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. For example, Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution, generally provides that a lender has 60 days to comply with its obligations under the extension of credit after being notified by a borrower of a failure to comply with any such obligation. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender 60 days after receipt of notice to comply, as provided in this Section 19, with Lender's obligations under the Extension of Credit to the full extent permitted by Section 50(a)(6), Article XVI of the Texas Constitution. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have 60 days after receipt of notice to comply with the provisions of Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14, and will give Lender 60 days after such notice has been received by Lender to comply. Except as otherwise required by Applicable Law, only after Lender has received said notice, has had 60 days to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit. Borrower will cooperate in reasonable efforts to correct any failure by Lender to comply with Section 50(a)(6), Article XVI of the Texas Constitution.

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article

VMP®-8036(TX) (0704)                    Page 12 of 18       Initials: _RBK_   **Form 3044.1  1/01 (rev. 10/03)**

249530575

XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Section 19, and the document may be reformed, by written notice from Lender, without the necessity of the execution of any amendment or new document by Borrower, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, Extension of Credit charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by Applicable Law.

It is the express intention of Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by Applicable Law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document may be reformed, by written notice from Lender, without the necessity of the execution of any new amendment or new document by Borrower.

Lender's right-to-comply as provided in this Section 19 shall survive the payoff of the Extension of Credit. The provision of this Section 19 will supersede any inconsistent provision of the Note or this Security Instrument.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial

249530575

actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.

The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.

22. Power of Sale. It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Section 22 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

VMP®-8036(TX) (0704)          Page 14 of 18          Initials: RDK    Form 3044.1  1/01 (rev. 10/03)

249530575

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Within a reasonable time after termination and full payment of the Extension of Credit, Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recordation costs. **OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

**24. Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, then, subject to Section 12, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 24 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

**25. Proceeds.** Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or debt to another lender.

**26. No Assignment of Wages.** Borrower has not assigned wages as security for the Extension of Credit.

**27. Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

**28. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**29. Acknowledgment of Waiver by Lender of Additional Collateral.** Borrower acknowledges that Lender waives all terms in any of Lender's loan documentation (whether existing now or created in the future) which (a) create cross default; (b) provide for additional collateral; and/or (c) create personal liability for any Borrower (except in the event of actual fraud), for the Extension of Credit. This waiver includes, but is not limited to, any (a) guaranty; (b) cross collateralization; (c) future indebtedness; (d) cross default; and/or (e) dragnet provisions in any loan documentation with Lender.

Initials: *RDK*
Form 3044.1  1/01 (rev. 10/03)

249530575

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS EXTENSION OF CREDIT WITHOUT PENALTY OR CHARGE.

Printed Name: _Ronald D Kossey_
*[Please Complete]*

_____(Seal)
RONALD D. KOSSEY          -Borrower

Printed Name: _____
*[Please Complete]*

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

VMP®-8036(TX) (0704)          Page 17 of 18          Form 3044.1  1/01 (rev. 10/03)

STATE OF TEXAS
County of WISE

Before me ___Julie Clark___    on this day personally appeared
___Ronald D. Kossey___

known to me (or proved to me on the oath of ⎯⎯⎯⎯
or through __TX Drivers License__ ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this __4__ day of __February 2008__

(Seal)

JULIE CLARK
MY COMMISSION EXPIRES
February 27, 2008

Notary Public

My Commission Expires: __2/27/2008__

VMP®-8036(TX) (0704)                Page 18 of 18

Initials: __RDK__
Form 3044.1  1/01 (rev. 10/03)

HONORABLE Sherry Parker-Lemon
**COUNTY CLERK**
Decatur, Texas 76234



70 2008 00020311

---

**Instrument Number: 2008-20311**
As
**Official Records**

**Recorded On: February 15, 2008**

**Parties: KOSSEY RONALD D**                                    **Billable Pages: 6**

**To    NATIONSTAR MORTGAGE LLC**                          **Number of Pages: 7**

**Comment: TX HM EQTY AFF AND AGRMNT**

( Parties listed above are for Clerks reference only )

---

**** Examined and Charged as Follows: ****

Official Records                          36.00

**Total Recording:**                  **36.00**

---

************ **DO NOT REMOVE THIS PAGE IS PART OF THE INSTRUMENT** ************

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                              **Record and Return To:**
Document Number: 2008-20311
Receipt Number: 185958                    NATIONAL DIVISION
Recorded Date/Time: February 15, 2008 02:24:03P    TRANSCONTINENTAL TITLE COMPANY
Book-Vol/Pg: BK-OR VL-1908 PG-77          4033 TAMPA ROAD SUITE 101
User / Station: K Griffith - Front Counter    OLDSMAR FL 34677

---



I hereby certify that this instrument was filed
on the date and time stamped hereon and
was duly recorded in the volume and page
of the named records of Wise County.

**Sherry Parker-Lemon**
**Wise County Clerk**    

EXHIBIT 3

201806395     ADT
05/30/2018 12:26:08 PM  Total Pages: 2  Fee: 26.00
Sherry Lemon, County Clerk – Wise County, Texas

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Fannie Mae Loan # 4005798187
Meridian Loan # 2683491



**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interests secured thereby, all liens, and any rights due or to become due thereon, to **US BANK TRUST N.A., AS TRUSTEE OF THE BUNGALOW Series III TRUST, WHOSE ADDRESS IS 7114 E. STETSON DRIVE, SUITE 250, SCOTTSDALE, AZ 85251, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust bearing the date 02/04/2008, was executed by **RONALD D. KOSSEY** and recorded as **Vol 1908, Page 58 and Doc # 2008-20310,** in the records of Real Property of **WISE** County, **Texas.**

**IN WITNESS WHEREOF,** this Assignment is executed on _____5 / 17 /2018 (MM/DD/YYYY).
NATIONSTAR MORTGAGE LLC

By: _____
Susan Schotsch
Vice President of Loan Documentation

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on _____5 / 17_____/2018 (MM/DD/YYYY), by Susan Schotsch as Vice President of Loan Documentation of NATIONSTAR MORTGAGE LLC, who, as such Vice President of Loan Documentation being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.



Nicole Shields
Notary Public - State of FLORIDA
Commission expires: 08/05/2020



NICOLE SHIELDS
Notary Public – State of Florida
My Comm. Expires August 5, 2020
Commission # GG126925

**Document Prepared By: Robert E. Fletcher · c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

When Recorded Return To: Fannie Mae, C/O Nationwide Title Clearing, Inc. 2100 Alt. 19 North, Palm Harbor, FL 34683

FNMA1 403114331 2018-NPL1-PL1-SALE    DOCR T171805-08:24:18 [C-1] FRMTXG1

*D0030764769*

## FILED AND RECORDED

**Instrument Number: 201806395**

Filing and Recording Date: 05/30/2018 12:26:08 PM  Pages: 2  Recording Fee: $26.00

I hereby certify that this instrument was FILED on the date and time stamped hereon and
RECORDED in the RECORDS of Wise County, Texas.



Sherry Lemon, County Clerk
Wise County, Texas

ANY PROVISION CONTAINED IN ANY DOCUMENT WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE REAL
PROPERTY DESCRIBED THEREIN BECAUSE OF RACE OR COLOR IS INVALID UNDER FEDERAL LAW AND IS
UNENFORCEABLE.  **DO NOT DESTROY - This document is part of the Offical Record.**

Deputy: Sarah Enochs

EXHIBIT 4

ft

201814154        ADT
12/10/2018 12:08:13 PM  Total Pages: 3  Fee: 30.00
Sherry Lemon, County Clerk - Wise County, Texas

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

Loan No: 2683491
Svcr Ln No: 1461530575

7687501

### ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE BUNGALOW SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **2/4/2008**
Original Loan Amount: **$100,000.00**
Executed by (Borrower(s)): **RONALD D. KOSSEY**
Original Trustee: **BAXTER & SCHWARTZ P.C.**
Original Beneficiary: **NATIONSTAR MORTGAGE LLC**
Filed of Record: In Book **OR1908**, Page **58**,
Document/Instrument No: **2008-20310** in the Recording District of **WISE, TX**, Recorded on 2/15/2008.

Property more commonly described as: **135 LAKESHORE DRIVE, RUNAWAY BAY, TEXAS 76426**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____ 1-26-18

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE BUNGALOW SERIES III TRUST,
BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT,**

By: **DANIEL SLEDD**                        Witness Name: **LATASHA DANIELS**
Title: **VICE PRESIDENT**

2683491 FNMA_Feb18 7687501

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED. AND NOT THE TRUTHFULNESS. ACCURACY. OR VALIDITY OF THAT DOCUMENT

State of    **FLORIDA**
County of   **PINELLAS**

On ⎍⎍·⎍⎍·⎍⎍⎍⎍⎍⎍⎍⎍⎍⎍, before me, **JULIE ARENCIBIA**, a Notary Public, personally appeared **DANIEL SLEDD, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE BUNGALOW SERIES III TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify DANIEL SLEDD, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name) **JULIE ARENCIBIA**
My commission expires: **07/18/2022**



JULIE ARENCIBIA
Commission # GG 197807
Expires July 18, 2022
Bonded Thru Budget Notary Services

2683491 FNMA_Feb18 7687501

Order: 2021-00844
**2018-14154 REC ALL**

Requested By: ahmed.aatif, Printed: 5/27/2021 12:14 PM

201814154    12/10/2018 12:08:13 PM    Page 3 of 3

## FILED AND RECORDED

**Instrument Number: 201814154**

Filing and Recording Date: 12/10/2018 12:08:13 PM  Pages: 3  Recording Fee: $30.00

I hereby certify that this instrument was FILED on the date and time stamped hereon and RECORDED in the RECORDS of Wise County, Texas.



*Sherry Lemon*

Sherry Lemon, County Clerk
Wise County, Texas

ANY PROVISION CONTAINED IN ANY DOCUMENT WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE REAL PROPERTY DESCRIBED THEREIN BECAUSE OF RACE OR COLOR IS INVALID UNDER FEDERAL LAW AND IS UNENFORCEABLE.  **DO NOT DESTROY - This document is part of the Offical Record.**

Deputy: Sarah Enochs

EXHIBIT 5

BSI Financial Services
PO Box 9110
Temecula, CA 92589-9110



9307 1100 1170 1058 6111 74

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

Send Payments to:
BSI Financial Services
314 S. Franklin Street
Titusville, PA  16354

Send Correspondence to:
Loan Servicing Center
314 S. Franklin Street
Titusville, PA  16354

20210331-186

RONALD D KOSSEY
135 LAKESHORE DR
RUNAWAY BAY, TX 76426-9466



TX_NOI{CM}

 **BSI Financial Services**

03/30/2021

Sent Via Certified Mail
9307 1100 1170 1058 6111 74

RONALD D KOSSEY
135 LAKESHORE DR
RUNAWAY BAY, TX 76426-9466

Loan Number:       1461530575
Property Address:   135 LAKESHORE DRIVE
                    RUNAWAY BAY, TX 76426

## NOTICE OF DEFAULT AND INTENT TO ACCELERATE

Dear RONALD D KOSSEY:

This letter is formal notice by BSI Financial Services (herein as "BSI") the Servicer of the above-referenced loan, on behalf of US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF TIKI SERIES III TRUST that you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to pay the amounts due.

The loan is due for 10/08/2019 and subsequent payments, plus late charges, fees and costs. As of today, the total delinquency and reinstatement amount is $24,224.34, which consists of the following:

| | |
|---|---:|
| Next Payment Due Date | 10/08/2019 |
| Total Monthly Payments Due: | $22,024.80 |
| (4 @ $1,096.03) | |
| (12 @ $1,285.68) | |
| (2 @ $1,106.26) | |
| Late Charges | $972.54 |
| Other Fees: | $1,227.00 |
| Escrow Advance: | $0.00 |
| Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | **$24,224.34** |

**It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that BSI paid on your behalf or advanced to your account.**

This letter is a formal demand to pay $24,224.34. If the default, together with additional payments that subsequently become due, is not cured by 05/04/2021, BSI will accelerate the note so that the entire debt is immediately due and payable, and take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the property.



TX_NOI
Page 1 of 3

9307 1100 1170 1058 6111 74

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, BSI offers consumer assistance programs designed to help resolve delinquencies and avoid FORECLOSURE. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternatives. If you would like to learn more about these programs, you may contact the Loss Mitigation Department at 800-327-7861, Monday - Friday 8 a.m. to 11 p.m. EST and Sat 8 a.m. to 12 p.m. EST. WE ARE VERY INTERESTED IN ASSISTING YOU.

The default above can be cured by payment of the total delinquency and reinstatement amount plus any additional payments and fees that become due by 05/04/2021. Note that in addition to the regular monthly payments, additional charges, costs and fees may become due during the period between today's date and the date the aforementioned payments are due. You may contact our Collection Department at 800-327-7861 to obtain updated payment information.

Please include your loan number and property address with your payment and send to:

    BSI Financial Services
    P.O. Box 517
    Titusville, PA 16354-0517

    or Overnight
    BSI Financial Services
    314 S. Franklin Street
    Titusville, PA 16354

If you wish to dispute the delinquency, or if you dispute the calculation of amount of the delinquency and reinstatement amount, you may contact us by calling 800-327-7861.

You have the right to reinstate the loan after acceleration, and to bring a court action to assert the non-existence of a default or any other defense to acceleration or foreclosure sale. Failure to respond to this letter may result in the loss of your property. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address and telephone number.

BSI is the mortgage servicer for the mortgagee of the Deed of Trust and the parties have entered into an agreement granting BSI authority to service the mortgage and represent the mortgagee (the "Servicing Agreement"). Pursuant to the Servicing Agreement, BSI is granted authority to collect and service debt associated with the Deed of Trust. Under §51.0025 of the Texas Property Code, BSI, as mortgage servicer, is authorized to administer any resulting foreclosure of the property covered by the Deed of Trust on behalf of the Mortgagee. All communication about your mortgage should be made through the Mortgage Servicing Department of BSI at 314 S Franklin Street 2nd Floor, Titusville, PA 16354.

**Attention Servicemembers and Dependents**: **Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.** Servicemembers on active duty, or a spouse or dependent of such a servicemember, may be entitled to certain protections under the Servicemembers Civil Relief Act ("SCRA") regarding the servicemember's interest rate and the risk of foreclosure. SCRA and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances. If you are currently in the military service, or have been within the last 12 months, **AND** joined after signing the Note and Security Instrument now in default, please notify BSI Financial Services immediately. When contacting BSI Financial Services as to your military service, you must provide positive

proof as to your military status. Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. Homeowner counseling is also available at agencies such as Military OneSource (www.militaryonesource.mil; 1-800-342-9647) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil), and through HUD-certified housing counselors (http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm). You can also contact us toll-free at 800-327-7861 if you have questions about your rights under SCRA.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home. You may contact a government approved housing counseling agency which provides free or low-cost housing counseling. You should consider contacting one of these agencies immediately. These agencies specialize in helping homeowners who are facing financial difficulty. Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance. For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies, please call (800) 569-4287 or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

You may be eligible for assistance from the Homeownership Preservation Foundation or other foreclosure counseling agency. You may call the following toll-free number to request assistance from the Homeownership Preservation Foundation: (888) 995-HOPE (4673). If you wish, you may also contact us directly at 800-327-7861 and ask to discuss possible options.

If your loan was originated as a Texas Home Equity Loan under the Texas Constitution, Article XVI, Section 50(a)(6), your property will be scheduled for foreclosure in accordance with Rules 735 and 736 of the Texas Rules of Civil Procedure and the Texas Constitution, by obtaining a court order for the foreclosure.

This matter is very important. Please give it your immediate attention.

Sincerely,

BSI Financial Services
314 S Franklin Street 2nd Floor
Titusville, PA 16354
800-327-7861

Licensed as Servis One, Inc. dba BSI Financial Services.
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET). Colorado Office Location: 7200 S. Alton Way, Suite B180, Centennial, CO 80112 (303) 309-3839. Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (# 2001485-DCA). North Carolina Collection Agency Permit (# 105608).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

FEDERAL LAW REQUIRES US TO ADVISE YOU THAT BSI FINANCIAL SERVICES IS A DEBT COLLECTOR AND THAT THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO THE AUTOMATIC STAY IN A BANKRUPTCY PROCEEDING, THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT AN INDEBTEDNESS AS YOUR PERSONAL OBLIGATION. IF YOU ARE REPRESENTED BY AN ATTORNEY, PLEASE PROVIDE US WITH THE ATTORNEY'S NAME, ADDRESS AND TELEPHONE NUMBER.



BSI Financial Services
PO Box 9110
Temecula, CA 92589-9110



23599994651

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

Send Payments to:
BSI Financial Services
314 S. Franklin Street
Titusville, PA   16354

Send Correspondence to:
Loan Servicing Center
314 S. Franklin Street
Titusville, PA   16354

20210331-186

RONALD D KOSSEY
135 LAKESHORE DR
RUNAWAY BAY, TX 76426-9466



TX_NOI(FC)

 **BSI Financial Services**

03/30/2021

RONALD D KOSSEY
135 LAKESHORE DR
RUNAWAY BAY, TX 76426-9466

Loan Number:        1461530575
Property Address:   135 LAKESHORE DRIVE
                    RUNAWAY BAY, TX 76426

## NOTICE OF DEFAULT AND INTENT TO ACCELERATE

Dear RONALD D KOSSEY:

This letter is formal notice by BSI Financial Services (herein as "BSI") the Servicer of the above-referenced loan, on behalf of US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF TIKI SERIES III TRUST that you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to pay the amounts due.

The loan is due for 10/08/2019 and subsequent payments, plus late charges, fees and costs. As of today, the total delinquency and reinstatement amount is $24,224.34, which consists of the following:

| | |
|---|---|
| Next Payment Due Date | 10/08/2019 |
| Total Monthly Payments Due: | $22,024.80 |
| (4 @ $1,096.03) | |
| (12 @ $1,285.68) | |
| (2 @ $1,106.26) | |
| Late Charges | $972.54 |
| Other Fees: | $1,227.00 |
| Escrow Advance: | $0.00 |
| Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | **$24,224.34** |

**It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that BSI paid on your behalf or advanced to your account.**

This letter is a formal demand to pay $24,224.34. If the default, together with additional payments that subsequently become due, is not cured by 05/04/2021, BSI will accelerate the note so that the entire debt is immediately due and payable, and take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the property.



TX_NOI
Page 1 of 3

2359994651

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, BSI offers consumer assistance programs designed to help resolve delinquencies and avoid FORECLOSURE. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternatives. If you would like to learn more about these programs, you may contact the Loss Mitigation Department at 800-327-7861, Monday - Friday 8 a.m. to 11 p.m. EST and Sat 8 a.m. to 12 p.m. EST. WE ARE VERY INTERESTED IN ASSISTING YOU.

The default above can be cured by payment of the total delinquency and reinstatement amount plus any additional payments and fees that become due by 05/04/2021. Note that in addition to the regular monthly payments, additional charges, costs and fees may become due during the period between today's date and the date the aforementioned payments are due. You may contact our Collection Department at 800-327-7861 to obtain updated payment information.

Please include your loan number and property address with your payment and send to:

    BSI Financial Services
    P.O. Box 517
    Titusville, PA 16354-0517

    or Overnight
    BSI Financial Services
    314 S. Franklin Street
    Titusville, PA 16354

If you wish to dispute the delinquency, or if you dispute the calculation of amount of the delinquency and reinstatement amount, you may contact us by calling 800-327-7861.

You have the right to reinstate the loan after acceleration, and to bring a court action to assert the non-existence of a default or any other defense to acceleration or foreclosure sale. Failure to respond to this letter may result in the loss of your property. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address and telephone number.

BSI is the mortgage servicer for the mortgagee of the Deed of Trust and the parties have entered into an agreement granting BSI authority to service the mortgage and represent the mortgagee (the "Servicing Agreement"). Pursuant to the Servicing Agreement, BSI is granted authority to collect and service debt associated with the Deed of Trust. Under §51.0025 of the Texas Property Code, BSI, as mortgage servicer, is authorized to administer any resulting foreclosure of the property covered by the Deed of Trust on behalf of the Mortgagee. All communication about your mortgage should be made through the Mortgage Servicing Department of BSI at 314 S Franklin Street 2nd Floor, Titusville, PA 16354.

**Attention Servicemembers and Dependents**: **Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.** Servicemembers on active duty, or a spouse or dependent of such a servicemember, may be entitled to certain protections under the Servicemembers Civil Relief Act ("SCRA") regarding the servicemember's interest rate and the risk of foreclosure. SCRA and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances. If you are currently in the military service, or have been within the last 12 months, **AND** joined after signing the Note and Security Instrument now in default, please notify BSI Financial Services immediately. When contacting BSI Financial Services as to your military service, you must provide positive

proof as to your military status. Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. Homeowner counseling is also available at agencies such as Military OneSource (www.militaryonesource.mil; 1-800-342-9647) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil), and through HUD-certified housing counselors (http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm).     You can also contact us toll-free at 800-327-7861 if you have questions about your rights under SCRA.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home. You may contact a government approved housing counseling agency which provides free or low-cost housing counseling. You should consider contacting one of these agencies immediately. These agencies specialize in helping homeowners who are facing financial difficulty. Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance. For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies, please call (800) 569-4287 or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

You may be eligible for assistance from the Homeownership Preservation Foundation or other foreclosure counseling agency. You may call the following toll-free number to request assistance from the Homeownership Preservation Foundation: (888) 995-HOPE (4673). If you wish, you may also contact us directly at 800-327-7861 and ask to discuss possible options.

If your loan was originated as a Texas Home Equity Loan under the Texas Constitution, Article XVI, Section 50(a)(6), your property will be scheduled for foreclosure in accordance with Rules 735 and 736 of the Texas Rules of Civil Procedure and the Texas Constitution, by obtaining a court order for the foreclosure.

This matter is very important. Please give it your immediate attention.

Sincerely,

BSI Financial Services
314 S Franklin Street 2nd Floor
Titusville, PA 16354
800-327-7861

Licensed as Servis One, Inc. dba BSI Financial Services.
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET). Colorado Office Location: 7200 S. Alton Way, Suite B180, Centennial, CO 80112 (303) 309-3839. Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (# 2001485-DCA). North Carolina Collection Agency Permit (# 105608).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

FEDERAL LAW REQUIRES US TO ADVISE YOU THAT BSI FINANCIAL SERVICES IS A DEBT COLLECTOR AND THAT THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO THE AUTOMATIC STAY IN A BANKRUPTCY PROCEEDING, THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT AN INDEBTEDNESS AS YOUR PERSONAL OBLIGATION. IF YOU ARE REPRESENTED BY AN ATTORNEY, PLEASE PROVIDE US WITH THE ATTORNEY'S NAME, ADDRESS AND TELEPHONE NUMBER.



2359994651

EXHIBIT 6

# DECLARATION OF MAILING

**iMailTracking, LLC**
9620 Ridgehaven Court, Suite A
San Diego, CA  92123

Reference No:          21-5234
Mailing Number:        0018513-01
Type of Mailing:       TXNOA

I, _____**Jacob Smith**_____, declare as follows:

I am, and at all times herein mentioned, a citizen of the United States, over the age of eighteen years and a resident of San Diego County, California. I am not a party to the action/matter identified in the document(s) referenced below. My business address is iMailTracking, LLC, 9620 Ridgehaven Ct., Ste. A, San Diego, CA 92123.

At the request of Prestige Default Services on 6/3/2021, I deposited in the United States mail a copy of the attached document(s), in separate sealed envelopes, in accordance with the checked mailing classes listed below, postage prepaid, to the address list in Exhibit A which is attached hereto and made a part hereof.

        ☒ First Class
        ☐ Certified
        ☒ Certified with Return Receipt
        ☐ Certified with Return Receipt and Restricted Delivery
        ☐ Certified with Electronic Return Receipt
        ☐ Registered
        ☐ Registered International

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date and Location: 6/3/2021 San Diego, California

Jacob Smith, Mail Production Specialist, iMailTracking, LLC

Digital Declaration.doc



# **GB**
## GHIDOTTI BERGER

9720 Coit Road, Suite 220-228
Plano, Texas 75025
Phone: (972) 893-3096 ext. 1019
Fax: 949-427-2732

# NOTICE OF ACCELERATION OF MATURITY

## THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

Date: June 2, 2021

T.S. No. 21-5234

Re: $100,000.00 promissory note (the "Note", whether one or more) dated 2/4/2008, executed by RONALD D. KOSSEY, UNMARRIED, and payable to the order of Nationstar Mortgage LLC as therein provided, secured by a deed of trust (the "Deed of Trust") dated 2/4/2008 of even date therewith, and recorded in Wise County, Texas, covering the property described in said Deed of Trust

RONALD D. KOSSEY
135 LAKESHORE DRIVE
RUNAWAY BAY, TX 76426

You have previously been advised by letter dated 3/30/2021, of certain defaults under the Note or Deed of Trust and informed of the intent to accelerate the maturity date of the Note if defaults therein were not cured within the specified time period. Because of defaults in complying with the terms and provisions of the Note and Deed of Trust, notice is hereby given that the present legal holder of the Note <u>HAS ACCELERATED THE MATURITY DATE OF THE NOTE</u>. As a result of such acceleration, the entire unpaid principal balance of the Note and all accrued interest and all other sums lawfully owing on the Note or under the Deed of Trust are now due and payable and demand is hereby made for the immediate payment in full of all such sums.

YOU WILL, THEREFORE, TAKE NOTICE that, pursuant to Tex.Const.Art. XVI, §50(a)(6) and Rules 735 and 736 of the Texas Rules of Civil Procedure, the noteholder intends to petition a court of competent jurisdiction for an order permitting foreclosure of the property and then, pursuant to Section 51.002 of the Texas Property Code, a Notice of Substitute Trustee's Sale (the "Notice") will be posted at the courthouse door of Wise County, Texas, and a copy of the Notice will be filed in the office of the County Clerk of Wise County, Texas.

If payment in full of the outstanding principal balance of the Note, together with all interest accrued thereon and all other lawful charges and attorney's fees incurred to date are not received before the foreclosure sale, the liens created under the Deed of Trust will be foreclosed and any sums received at the foreclosure sale shall be applied as set forth in the Deed of Trust.

In the event the subject property is sold at foreclosure for an amount not sufficient to satisfy the entire unpaid balance of the Note plus accrued but unpaid interested thereon plus escrow charges, late charges, default interest, trustee's fees, attorney's fees, and expenses incurred in connection with the foreclosure, you may be liable for the deficiency.

If you have received a discharge in bankruptcy, the lender does not seek a monetary judgment against you but only seeks possession of the collateral which is security for the debt.

Dated: 6/2/2021

Ramiro Cuevas, Aurora Campos, Jonathan Harrison, Shawn Schiller, Patrick Zwiers, Darla Boettcher, Irene Lindsay, Dana Kamin, Lisa Bruno, Angie Uselton, Jami Hutton, Tonya Washington, Monica Henderson, Terry Waters, Logan Thomas, David Stockman, Donna Stockman, Brenda Wiggs, Michelle Schwartz, Guy Wiggs, Kathy

**Notice of Acceleration of Maturity**

Loan No. 1461530575
T.S. No. 21-5234

Arrington, Janet Pinder, Rick Snoke, Briana Young, Patricia Sanchez, Kristy Forget, Heather Smith, Omar Reynosa, Prestige Default Services

/s/ Heather Smith
By: Heather Smith, Trustee Sale Officer

Page 2 of 2

Postal Class:        First Class
Type of Mailing:     TXNOA
Attachment:          0018513-01 000 20210602 Prestige000402

Sender: Prestige Default Services
1920 Old Tustin Ave.
Santa Ana CA 92705

2            (11)9690024813763924
             RONALD D. KOSSEY
             135 LAKESHORE DRIVE
             RUNAWAY BAY, TX 76426

Exhibit A to Declaration of Mailing

Postal Class:     Certified - Ret                                          Sender: Prestige Default Services
Type of Mailing:  TXNOA                                                    1920 Old Tustin Ave.
Attachment:       0018513-01 000 20210602 Prestige000402                   Santa Ana CA 92705

1          71969002484065585645
           RONALD D. KOSSEY
           135 LAKESHORE DRIVE
           RUNAWAY BAY, TX 76426

EXHIBIT 7

**FILED**
4:21 PM
September 20, 2021
BRENDA ROWE
DISTRICT CLERK-WISE COUNTY, TX
BY _Lucretia Biggerstaff_ DEPUTY

CAUSE NO. CV21-07-506

| | | |
|---|---|---|
| IN RE: ORDER FOR FORECLOSURE | § | IN THE DISTRICT COURT |
| CONCERNING | § | |
| 135 LAKESHORE DRIVE | § | |
| RUNAWAY BAY, TX 76426 | § | |
| UNDER TEX R. CIV. P. 736 | § | |
| | § | WISE COUNTY, TEXAS |
| PETITIONER: US BANK TRUST | § | |
| NATIONAL ASSOCIATION AS TRUSTEE | § | |
| OF THE TIKI SERIES III TRUST | § | |
| | § | |
| RESPONDENTS: RONALD D KOSSEY | § | 271ST JUDICIAL DISTRICT |

## DEFAULT ORDER

1. On this day, the Court considered Petitioner's motion for a default order granting its application for an expedited order under Rule 736. Petitioner's application complies with the requirements of Texas Rule of Civil Procedure 736.1.

2. The name and last known address of each Respondent subject to this order is Ronald D. Kossey, 135 Lakeshore Drive, Runaway Bay, TX 76426. Each Respondent was properly served with the citation, but none filed a response within the time required by law. The return of service for each Respondent has been on file with the court for at least ten days.

3. The property that is the subject of this foreclosure proceeding is commonly known as 135 Lakeshore Drive, Runaway Bay, TX 76426 , with the following legal description:

   **Being all of Lot 73, Block 8, Unit 1 Runaway Bay, a Subdivision on Wise County, Texas, according to the Plat(s) recorded in Plat Cabinet A, Section 111-126, Plat Records of Wise County, Texas.**

4. The lien to be foreclosed is indexed or recorded as Instrument No. 2008-20310, as Book 1908, Page 58 and recorded in the real property records of Wise County, Texas.

5. The material facts establishing Respondent's default are alleged in the Petitioner's application and the supporting affidavit. Those facts are adopted by the court and incorporated by reference in this order.

6. Based on the affidavit of Petitioner, no Respondent subject to this order is protected from foreclosure by the Servicemembers Civil Relief Act, 50 U.S.C. App § 501 *et seq.*

7. Therefore, the Court grants Petitioner's motion for default order under Texas Rules of Civil Procedure 736.7 and 736.8. Petitioner may proceed with foreclosure of the property described above in accordance with applicable law and the loan agreement, contract, or lien sought to be foreclosed.

8. This order is not subject to a motion for rehearing, a new trial, a bill of review, or an appeal. Any challenge to this order must be made in a separate, original proceeding filed in accordance with Texas Rule of Civil Procedure 736.11.


SIGNED this _____20_____ day of _____9_____, 2021.


_____

**JUDGE PRESIDING**


**Approved and Entry Requested:**

**GHIDOTTI | BERGER LLP**

By:_____/s/ Chase A. Berger_____
Chase A. Berger
State Bar No.: 24115617
Ghidotti | Berger, LLP
9720 Coit Road, Suite 220-228
Plano, Texas 75025
Tel: (305) 501-2808
Fax: (954) 780-5578
Email: cberger@ghidottiberger.com
ATTORNEY FOR PETITIONER

EXHIBIT 8

# REGISTER OF ACTIONS
## CASE NO. CV21-07-506

| | |
|---|---|
| **IN RE: ORDER FOR FORECLOSURE CONCERNING 135 LAKE SHORE DRIVE, RUNAWAY BAY, TX 76426 RONALD D. KOSSEY** §<br>§<br>§<br>§<br>§ | Case Type: **02 - Home Equity - Expedited Foreclosure**<br>Date Filed: **07/20/2021**<br>Location: **271st Judicial District Court** |

### PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| Applicant | **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES III TRUST** | **CHASE A. BERGER, ESQ**<br>*Retained*<br>305-501-2808(W) |
| Respondent | **KOSSEY, RONALD D** | |
| Respondent | **OCCUPANT** | |

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | | | | |
|---|---|---|---|---|
| 07/20/2021 | **APPLICATION FOR HOME EQUITY - EXPEDITED FORECLOSURE (OCA)** | | | |
| 07/22/2021 | **Citation** | | | |
| | KOSSEY, RONALD D | Served | 08/06/2021 | |
| | | Returned | 08/10/2021 | |
| 07/22/2021 | **Citation** | | | |
| | OCCUPANT | Served | 08/06/2021 | |
| | | Returned | 08/10/2021 | |
| 09/15/2021 | **MOTION FOR DEFAULT JUDGMENT** | | | |
| 09/20/2021 | **ORDER FOR FORECLOSURE (OCA)** | | | |
| 09/20/2021 | **DEFAULT JUDGMENT- CERTIFIED COPIES MAILED TO DEFENDANT(S):** | | | |